[Civ. No. 15114.  Second Dist., Div. Two.  Apr. 17, 1946.]

FANNIE A. FINNEGAN, Appellant, v. SIMON HERNAN-
DEZ, Respondent.

Mark H. Edwards for Appellant.

Charles F. Gerard for Respondent.

MOORE, P. J.—Plaintiff appeals from a judgment quieting title to her home in favor of defendant. She contends (1) that having paid the consideration, the deceased wife of defendant, Antonia Hernandez, as grantee became trustee of a resulting trust in plaintiff's favor, and (2) that the evidence does not support the findings and the judgment that plaintiff intended to, or did, convey a life estate to herself with the remainder to decedent.

### The Established Facts

About April 1, 1937, plaintiff was aged, ill and feeble. She desired to acquire a home and to have decedent care for her as long as plaintiff might live. Pursuant to plaintiff's request decedent made inquiry and found one F. S. Hinkle who held a contract for the purchase of a home in Santa Paula from a building and loan association for $800. The

exact balance due does not appear. He demanded $200 for his equity which plaintiff paid. The contract was assigned to decedent who received also from Hinkle the book containing receipts for sums which she thereafter sent to the association at the times of making subsequent payments. At the time of the transaction with Hinkle plaintiff and decedent agreed "that in consideration of Antonia Hernandez' taking care of and assisting in caring for said Fannie A. Finnegan during her lifetime" the latter would give the property to Antonia and the latter at the same time promised to care for and assist plaintiff during her lifetime. After payment of the $200 she caused Hinkle to assign to decedent his contract of purchase and the passbook of the association. Antonia thereby assumed the obligation to pay the balance due to the association. Plaintiff took possession of the passbook and prior to November 10, 1941, made "periodical payments upon said agreement." During such period in performance of the parol agreement decedent cared for and assisted plaintiff and fully performed her covenants until her decease. Immediately subsequent thereto defendant, husband of Antonia, in a probate proceeding properly instituted and conducted, caused a decree to be entered on December 8, 1941, by the Superior Court of Ventura County, setting aside to him as the community survivor the entire estate of decedent, including her interest in the contract assigned to her by Hinkle. Thereafter defendant paid the balance due on the contract, to wit, $156.35, and received a deed from the association on July 12, 1943.

Upon such facts a decree was entered adjudging that by reason of the oral agreement of the women decedent became entitled to a conveyance of the property; that such right passed to defendant by virtue of the probate decree and that he is entitled to have the title vested in him; that he is the owner of the property but that his title is subject to a life estate in plaintiff for her natural life with the right to occupy it while she lives; that she must pay defendant all sums he has paid on account of taxes and the balance on the contract and must pay all taxes falling due during her occupancy and avoid injuring any improvement on the property.

## No Resulting Trust

The contention that decedent became trustee of a resulting trust by virtue of plaintiff's advancement of the

purchase payments cannot prevail. To constitute a resulting trust it must be shown that the grantee had no beneficial interest. (54 Am.Jur. 152.) The findings establish beyond a peradventure that decedent's interest in the title arose at the moment of the assignment to her by Hinkle. From the complaint and from plaintiff's testimony it is established that the fee of the property should vest in Antonia and that she was to render valuable services therefor over an indefinite period.

A resulting trust can be established only by clear and convincing evidence by him who asserts its existence. (*Moulton* v. *Moulton,* 182 Cal. 185 [187 P. 421] ; *Gomez* v. *Cecena,* 15 Cal.2d 363 [101 P.2d 477].) The provisions of section 853 of the Civil Code do not apply in case of "a child or other natural object of bounty." In such event a gift will be presumed. (*Gomez* v. *Cecena, supra,* p. 367.) Where the relationship between him who pays the consideration for property and him who takes the title thereto is such that the payor is under obligation to make provision for the grantee, the presumption arises of an intention of the payor to discharge his obligation and the purchase is evidence of a gift. (*Spitler* v. *Kaeding,* 133 Cal. 500, 502 [65 P. 1040] ; *Lezinsky* v. *Mason Malt Whiskey Distilling Co.,* 185 Cal. 240 [196 P. 884].)

Appellant points out that the cases cited relate to situations in which legal heirs were the beneficiaries of the gifts. But the testimony of appellant established not only a genuine personal friendship between herself and decedent who had served plaintiff for fifteen years. It shows also that decedent was thereafter to nurse and serve plaintiff for an indefinite period. She had also cared for Mr. Finnegan for two years in his lifetime. Such services had been often gratuitously rendered, for Mrs. Finnegan had been the recipient of old age relief. Such was the situation when Hinkle accompanied Antonia to plaintiff's bedside where the oral contract was made. No relationship could more justifiably warrant an inference of intention to give than that which existed between the two women at the time of the Hinkle assignment. Plaintiff then stated to decedent that if she should receive a conveyance of the property during her lifetime it would vest a life interest in herself with the remainder to Antonia. In the light of their mutual confidence in each other the oral agreement justified the finding that plaintiff

caused the contract to be assigned to decedent with intent to vest her with the fee.

██ However, it is not accurate to say that plaintiff's act was a gift of the property to Antonia. Not only had she been served by decedent for over 15 years prior to Hinkle's assignment at slight expense to herself, but in addition to her promise to serve following the assignment decedent did in fact care for plaintiff for over four and a half years. On the basis of 50 cents a day for her nursing plaintiff and caring for the latter's home after the assignment Antonia earned no more than $810, which exceeds the total advanced by plaintiff. Payment of the monthly sums by plaintiff to the association was not a gift. Such payments constituted plaintiff's own appraisal of the actual value of decedent's service to her and should be deemed virtual compensation for the property. Therefore it is clearly an inaccuracy to say that plaintiff advanced the "periodical payments" aggregating about $650 as a gratuity. It would be inequitable to deny decedent's ownership of the fee in view of the assignment to her, of plaintiff's declared intention to invest her with the fee and of the consideration she actually paid with service.

But aside from plaintiff's evident appraisal of the services of decedent, the facts show clearly an intention on the part of plaintiff to advance the payments for decedent's benefit as well as for her own. She testified that it was agreed that at her death the fee should vest in Antonia. The predominating facts in the transaction are the chronic illness of plaintiff and the faithful service of decedent. The determination evidently derived by the court below is that such portion of the money advanced on the contract as was not repaid with nursing and domestic service, if any, was a gift.

PLAINTIFF INTENDED ONLY A LIFE ESTATE FOR HERSELF

██ The complaint alleged that the women orally agreed that if decedent would take care of plaintiff and assist her in taking care of the premises during plaintiff's lifetime appellant would give decedent the property; that pursuant to such agreement decedent assumed the Hinkle contract which was assigned to her; that the women agreed that plaintiff would advance the consideration for purchase and that if a deed were received during plaintiff's lifetime a life interest would be vested in plaintiff with the remainder to decedent, and if plaintiff should predecease Antonia the association

should convey the property directly to Antonia. In accordance with such pleading plaintiff testified that Antonia brought her boy along with Hinkle to witness her agreement with plaintiff, namely, that plaintiff should live on the property all of her life and pay out the contract but should thereafter make no more payments; then it was to be Antonia's. Such pleading and proof leave no doubt of plaintiff's intention to hold only a life estate and that the remainder should go to Antonia.

The contention that the vesting of the remainder in decedent was subject to a condition subsequent is disposed of by the finding that plaintiff agreed to and did advance the payments on the purchase price in return for Antonia's promise to care for and assist her friend. The paramount and ultimate fact of such a transaction is the payor's intention in advancing the moneys. (*Quinn* v. *Reilly,* 198 Cal. 465, 468 [245 P. 1091].) In this case the court found that appellant made the payments for the purpose of vesting the fee of the property in decedent and a life estate in herself. The testimony of plaintiff and the Hinkle assignment to Antonia support that finding. No valid reason appears why the judgment awarding plaintiff a life estate in the property with remainder to defendant should be disturbed.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.